# In the United States Court of Federal Claims

No. 16-1311C
(Originally filed: December 16, 2016)
(Reissued: January 25, 2017)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

GLOBAL DYNAMICS, LLC,

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*,

LOYAL SOURCE GOVERNMENT
SERVICES, LLC.,

      *Intervenor.*

Post-award bid protest; Price analysis; Price realism; waiver.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Edward J. Tolchin*, Washington, DC, with whom was *Revee M. Walters*, for plaintiff.

    *Jana Moses*, United States Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Debroah A. Bynum*, Assistant Director, Washington, DC, for defendant. *Julie Glascott*, U.S. Army Legal Services Agency, of counsel.

    *Michelle E. Littken*, Washington, DC, for intervenor.

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to agree upon protected material to be redacted. Those redactions are indicated by brackets.

OPINION

BRUGGINK, *Judge*.

This is a post-award bid protest of the Army's decision not to award one of several contracts for nursing, medical, and ancillary services in Hawaii and Guam to the plaintiff, Global Dynamics, LLC ("Global"). Oral argument on the parties' cross-motions for judgment on the administrative record was held on December 9, 2016. As stated at the conclusion of the argument, because plaintiff waived its right to protest the substance of the Army's discussions with it and because plaintiff has not otherwise established irrationality on the part of the agency, we deny plaintiff's motion and grant defendant's and intervenor's cross-motions.

BACKGROUND

The Army issued request for proposals No. W81K04-14-R-001 ("the RFP") on April 22, 2014. It solicited offers for medical and ancillary services staffing at military medical facilities in Hawaii and Guam. The solicitation was set aside entirely for small businesses. It anticipated award to a minimum of five offerors per labor specialty for an indefinite delivery and indefinite quantity of service provided under each contract. Offerors could bid on only one labor specialty or any combination of them: physician, traveling physician, nursing, traveling nursing, ancillary medical, and traveling ancillary medical services. Each specialty was further subdivided into multiple labor categories. Services were to be ordered by the issuance of task orders for which the contract holders would further compete. The task orders thereafter were to be on a fixed-price basis.

The solicitation called for a best value procurement based on three factors. They were technical quality, performance risk (past and present performance), and price. The first two were of equal importance and, when combined, of significantly more importance than price. Offerors were required to submit one volume for each factor. The RFP stated that the agency would make a trade off determination between price and the technical factors to determine the best value and most advantageous contract for the government. *See* Administrative Record ("AR") 272.

The first two factors, technical quality and performance risk, were rated adjectively, and price was ranked based on a total evaluated price calculated

2

for the entire proposal based on a matrix of labor rates for each labor category multiplied by the government's estimate of hours needed for each category. The contract has an anticipated four-year life. The offerors' proposed rates were in effect ceiling prices because each task order issued under the contract would be further competed among the contract holders.

In order to be considered for an award, offerors had to be rated at least "acceptable" for technical quality and "satisfactory" for performance risk. *Id.* The solicitation stated that price would be evaluated for reasonableness "based on adequate competition." AR 276. This was not further defined in the RFP nor did it list any other evaluative criteria for price.

The Army received 45 offers, and the Source Selection Evaluation Board ("SSEB") met and reviewed the technical volumes of the proposals, and the Performance Risk Assessment Group met and reviewed the performance risk submissions. They assigned adjectival ratings for reach offeror. The Contracting Officer ("CO") adjusted six of the SSEB's technical ratings after reviewing all of the results. AR 1286. The CO also performed the price calculation to come up with each offeror's total evaluated price. The Source Selection Authority ("SSA") reviewed all of these ratings and selected 18 offerors to comprise the competitive range.[2] Not all of the offerors in the competitive range met the criteria for award eligibility initially, but this was allowed because of the SSA's determination to hold discussions as part of a negotiated procurement under Federal Acquisition Regulation ("FAR") part 15. The SSA determined that the problems presented by each of the proposals in the competitive range could potentially be improved through discussions and could thus result in an award. *See* AR 1290.

Of the 18 offerors in the competitive range, Global Dynamics had the lowest evaluated price at [                ]. The highest offeror's price was over [        ] dollars. The Army's internal estimate for the four-year life of the contract was $51,895,298.88.

Plaintiff was presented with eight written discussion items in the first round of negotiations, two of which are relevant to its protest. They concerned Global's proposed prices. The agency informed plaintiff that its "total proposed price . . . appear[ed] low when compared to all other offerors in the

---

[2] For this procurement, the SSA and CO were not the same individual.

competitive range." AR 1386.  That was followed directly by a request to "review your total proposed price." *Id.*  The next discussion item listed 29 labor category prices that the agency determined to "appear low when compared to all other offerors in the competitive range." *Id.*  That was followed by a similar request for Global to "review your proposed hourly rates for the specialities listed." *Id*.

A review of the discussion items sent to the other 17 offerors in the competitive range reveals that all of them received discussion items regarding their proposed prices.  Four offerors were informed that their total evaluated price appeared high in comparison to the other offerors, and three offerors, including Global, were told that their total prices appeared low as compared to the other offerors.  The agency "request[ed]" all seven of them to "review [their] total proposed price[s]." *E.g.*, AR 1448.  All 18 of the competitive range offerors were informed that some number of their proposed prices for one or more labor specialties were high, low, or both as compared to all other admitted offerors.  The agency asked all of them to review these proposed prices.  Eight offerors were told that their price proposals contained rounding errors.  The Army asked these offerors to "correct [their] proposed rates to comply with solicitation requirements." *E.g.*, AR 1443.  One offeror was informed that it had not listed a price for one labor specialty, and the agency requested that the offeror supply that price.  All 18 offerors were invited to make proposal revisions and submit revised proposals to the agency  by June 2, 2015.

The Administrative Record reveals that the agency's price analysis was comprised of calculating the mean of every offeror's price for each labor specialty and the mean of all of the offeror's total evaluated prices and then comparing that mean against each individual offeror's prices (both for each specialty and the overall price).  Any price found to be at least one standard deviation above or below the mean was flagged as a discussion item. *See* AR 1292-93. The memorandum for the record concerning the price analysis states that the Army was concerned with the reasonableness of offered prices and cited FAR 15.401-1(b)(1): Price Analysis for commercial and non-commercial items. *Id.* at 1292.

In response to the Army's initial discussion items, plaintiff reviewed its pricing data by updating its market research to use 2015 estimates instead of the 2014 numbers on which its initial proposal had been based.  As a result, Global raised its price for 36 specialties, and its overall price thus increased to

[                    ]. AR at 1496.7.  The Army responded to the revised proposals with one more letter, several more discussion items, and a request for final proposal revisions.  In the letter to plaintiff, the agency informed Global that its price for one labor specialty, Dosimetrist, remained low in comparison to all other offerors.  In its final revised proposal, however, Global raised its proposed prices for 36 specialties, which brought its final proposed total price to [                    ].  AR at 1953.11-1953.13 (specialties); AR at 1958 (total price).

After receiving all of the final revisions, the Army convened the Source Selection Advisory Council ("SSAC") in May 2016, which reviewed all of the final offers and recommended award to five offerors.   The SSAC noted that all of the final offers had a technical rating of "acceptable" and that 14 of them had performance rating of "substantial confidence."  AR at 2068 (technical), 2077-78 (performance risk). Of the other three, two had "satisfactory" ratings and one was "limited."  AR at 2078.  The SSAC also noted that Global had received a strength as part of its technical proposal for its [          ] feature that would give the agency the ability to call upon a roster of "qualified back-fill candidates when an open shift is identified."  AR at 2080.  The Army did not find, however, that this strength was worth paying any price premium.  The end result of the SSAC's review was a recommendation to award to the 5 lowest priced offerors because they all had "acceptable" Technical Quality ratings and "substantial" Performance Risk ratings.  No distinction between the offerors was therefore justified based on anything other than price.  *See* AR at 2082.  Global had the seventh lowest price and was thus not recommended for award.

The SSA agreed and followed these recommendations.  The Source Selection Determination document largely parroted the SSAC's report, finding that none of the 17 proposals warranted paying any premium.  AR 2554-55. On May 12, 2016, the CO sent a letter to all 17 of the final offerors identifying the five awardees.[3]  Plaintiff requested a debriefing on May 16, 2016.   On June 16, 2016, the CO sent all of the debriefed unsuccessful offerors a written explanation, which included the prices of 4 of the successful awardees (Intervenor's price was not included in the list) and attached redacted copies of the SSAC's recommendations and the Source Selection Determination.

---

[3] One offeror withdrew its proposal before the final revised proposals.

On June 24, 2016, Global filed a protest at the Government Accountability Office ("GAO"), arguing that it was misled regarding its pricing and arbitrarily induced to raise its prices. It also alleged error in the Army's tradeoff decision in not regarding Global's [          ] feature as something for which more should be paid by the agency. GAO denied the protest on September 20, 2016, finding that the Army had not instructed Global to raise its prices and that it had properly considered the relative merit of plaintiff's [        ] feature. *See* AR at 2836-37; *Global Dynamics, LLC*, B-413313, 2016 CPD ¶ 307 (Comp. Gen. Sept. 20, 2016). Plaintiff filed its suit here on October 11, 2016. Loyal Source Government Services, the fifth lowest priced awardee, intervened on October 14, 2016.

## DISCUSSION

We have jurisdiction over challenges to agency actions with regard to procurements and proposed procurements pursuant to 28 U.S.C. § 1491(b)(1) (2012). We review agency procurement decisions for arbitrary and capricious conduct or conduct that is otherwise illegal. *Id.* § 1491(b)(4) (mandating that the court reviews agency decisions pursuant to the standards set forth in the Administrative Procedures Act). This is a highly deferential review; the standard is one of rationality. The court will not substitute its own judgment for that of the agency, even if a reasonable person might have come to a different conclusion. *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 213 (1997).

Plaintiff challenges the Army's decision not to award it a contract on the basis that it was induced to raise its price arbitrarily. It argues that the agency's discussion items regarding price lead plaintiff to believe that its prices were too low, effectively a weakness, and that it had no choice but to raise them. When confronted with a second round of discussion items that again raised price as an issue, plaintiff believed it was required by the Army to raise its prices a second time. This was all misleading to plaintiff because, in fact, the Army made its award determination on the opposite criteria, low price. Plaintiff was prejudiced, it argues, because it would not have raised its prices absent the government's inclusion of low prices as a discussion item during negotiations. Without a price raise, plaintiff would have remained the lowest priced offeror and would have received an award, according to plaintiff.

Plaintiff also argues that the agency should not have been concerned with the issue of low of prices because a price realism analysis is improper in

a fixed price contract unless specifically called out in the solicitation as a possibility.  The risk is on the offeror, not the agency, in a fixed price scenario, and thus price realism is normally inapplicable in that context, goes plaintiff's argument.  Global further points to the FAR's instruction regarding discussion items in a negotiated procurement, which is that the primary objective of any discussions is to "maximize the Government's ability to obtain best value." *See* 48 C.F.R. § 15.306(d)(2) (2016).  Here, Global contends that the agency's raising the issue of low prices, when it was not and could not have been concerned with low price as a performance risk was arbitrary and capricious because it did not further the goal of maximizing the best value to the government and only served to mislead plaintiff.

In its response and cross motion, defendant takes the position that the agency did not perform a price realism analysis, that is, an analysis of whether Global's price posed a risk of non-performance.  In defendant's view, the price analysis and corresponding discussion items were merely an accurate observation and could not mislead plaintiff.  Plaintiff was in fact low as compared to other offerors.  The agency did not instruct plaintiff to raise its prices nor did it state that the prices were too low.  It was Global's own business judgment that resulted in plaintiff's pricing itself out of the competition, argues defendant. It was not improper, in the government's view, to include information regarding low prices as part of the agency's price reasonableness determination, although neither in briefing nor at oral argument could counsel suggest a reason for the agency to have made the comment.

Intervenor takes a different tack in its briefing.  It argues that the agency was concerned with performance risk posed by low prices and had preserved for itself the question of whether an offeror's prices were too low by indicating in the solicitation that offerors were to demonstrate their understanding of performance requirements. *See* AR at 255, 273, 277.  Intervenor believes that the agency was therefore within its rights in conducting a price realism analysis.  Intervenor cites to a number of decisions from GAO that a solicitation need not invoke price realism by name so long as it otherwise indicates that the agency is concerned with the risk of nonperformance and asks for detailed price information.  Intervenor argues that plaintiff's initial price was too low and reflected Global's lack of understanding of the solicitation's requirements.  Thus, the Army's inclusion of low price in its discussion items was reasonable and not misleading.

We begin with the obvious.  There was an ambiguity regarding whether

the agency was conducting a price realism analysis when it announced to Global and others that it had compared the average of all of the offered prices with each particular offer and concluded that some were low.  Plaintiff is correct that agencies are required to inform offerors during negotiations of weaknesses and deficiencies in their proposals.  48 C.F.R. § 15.306(d)(3) (2016).  The cover letter included with the discussion items sent to plaintiff during the first round of negotiations contained the following proviso:

> Your proposal has areas of concern as detailed in the enclosed discussion Items (DIs).  While the enclosed DIs are provided to facilitate discussions and provides you an opportunity to make changes to your proposal, they are not meant to point out each and every instance of error or omission in your proposal.

AR 1382.  The discussion items attached to the letter contain items for each of the main evaluation factors: Technical Quality, Performance Risk, and Price.  Other than being in its own section, the items regarding price were not separately called out as somehow not of concern to the agency.  A reasonable reading of the Army's negotiation correspondence is that plaintiff's low prices were of concern to the agency.

The solicitation, however, did not invoke price realism by name or use any specific language regarding risk of nonperformance as a result of low prices.  The general citation to the language in the technical provisions regarding the offerors' understanding of performance requirements is certainly not an explicit indication that the agency would review prices for realism.  Whether, as intervenor argues, the Army could have done so does not affect the result, however.  Plaintiff waived any objection to the agency's ruminations on low prices by not objecting prior to adjusting its prices.[4]  The

---

[4] The same is true with regard to the second round of negotiations and the agency's cover letter, which informed Global that its labor rate for the Dosimetrist specialty remained low compared to all other offerors.  AR 1818.  If there was an ambiguity or question of the propriety of the agency's price analysis raised by the second letter, the time to challenge it was before submitting a final revised proposal, not after.  We note that the agency only identified one labor speciality as being low compared to other offerors.  Plaintiff, however, responded by raising the prices of 36 specialties, which

(continued...)

agency did not indicate why it was passing this pricing information on to Global. Either the agency had the right to make the comments, and they were accurate, or, as Global asserts here, it had no business doing so, in which case, to avoid overreacting, Global should have inquired why the agency made the comments.[5]   In any event, Global's decision to bump its prices up by approximately 15 percent was its own business judgment.

Having waived the issue of the propriety of the price analysis leaves plaintiff without a factual predicate to support an argument of irrationality. Plaintiff has not alleged that the mathematics performed by the Army in its price analysis was incorrect nor that the analysis itself was otherwise irrational, i.e, that taking the mean of all offers and performing a standard deviation calculation against it was unreasonable.[6]  The argument is only that plaintiff was misled in raising its prices too high.  Presumably, had plaintiff raised its prices somewhat less and remained one of the five lowest-priced offerors, it would not be suggesting irrationality on the part of the agency.

Compared to the 17 other offerors in the competitive range, plaintiff's prices initially were lower.  It was informed of this fact during discussions. Plaintiff was not instructed to raise its prices, however.  There was an

---

[4](...continued)
suggests at least that plaintiff was motived by more than just the Army's questioning of one of its specialty's prices when it made its final revisions to its prices.

[5] When asked by the court during argument why Global did not question the agency's price analysis at the time, plaintiff argued that it had no choice. Having been told its low price was a weakness, in order to remain competitive, it had to raise them.  That is no answer, however.  Procurement statutes provide several levels of administrative review of procurement actions before award (agency and GAO protests) and a legal challenge before award at the court is always an option as well.  Recourse was plainly available at the time, but plaintiff chose not to avail itself of the opportunity.  It is too late after bidding to challenge the agency's price analysis after responding to it with several proposal revisions.

[6] In fact, the FAR lists a comparison of offerors' prices as one approved method of determining that offered prices are fair and reasonable.  48 C.F.R. 15.404(b)(2)(i) (2016).

ambiguity regarding how the agency was using that information, but plaintiff did not pursue it then.  That ambiguity cannot form the basis for a successful protest now because it was patent at the time.  That being the case, Global's own judgment about how and whether to update and increase its prices are not proof of agency irrationality.  Plaintiff has not established that the Army acted arbitrarily, capriciously, or otherwise not in accordance with law.

## CONCLUSION

Not being able to show success on the merits, plaintiff cannot establish an entitlement to injunctive relief.  We need not further consider the other injunction factors.  Accordingly, we deny plaintiff's motion for judgment on the administrative record and grant defendant's and intervenor's cross-motions for judgment.  The clerk's office is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge